T.C. Memo. 2001-70

UNITED STATES TAX COURT

KARAN M. HINTZE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13537-98.                    Filed March 22, 2001.

Karan M. Hintze, pro se.

<u>James Gehres</u>, for respondent.

MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following
deficiencies, additions to tax, and penalties in petitioner's
1992 and 1994 Federal income taxes:

| Year | Deficiency | Addition to Tax Sec. 6651(a) | Penalty Sec. 6662(a) |
|------|-----------|------------------------------|----------------------|
| 1992 | $4,059 | $1,015 | $812 |
| 1994 | 16,984 | 849 | 3,397 |

The first set of issues in this case concerns whether petitioner realized gross receipts from her sole proprietorship in excess of that reported on her returns. The second set of issues deals with whether petitioner is entitled to various deductions for business expenses which petitioner claimed on Schedule C, Profit or Loss From Business, for the years in issue. Finally, we must decide whether petitioner is liable for the additions to tax and penalties determined by respondent.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

At the time the petition was filed in this case, petitioner resided in or near Ketchum, Idaho. During the years at issue, petitioner operated a sole proprietorship through which she provided cosmetology services. Petitioner performed this work out of her condominium apartment as well as at the homes of her clients.

In addition to providing services as a cosmetologist, petitioner developed a new line of business in the field of micropigmentation. As explained by petitioner, micropigmentation involves the changing of human body colors through the use of certain injected dyes. Micropigmentation is used not only in the

cosmetology field but also in the medical field as a component of reconstructive plastic surgery. In her capacity as a paramedical aesthetician, petitioner provided micropigmentation services in beauty spas and doctors' offices. Petitioner also trained others in the micropigmentation process and distributed the necessary equipment. In order to attract a market for her training courses, petitioner conducted introductory seminars on micropigmentation at a number of locations.

After concessions,[1] the following items remain in dispute with respect to petitioner's 1992 tax year:

| Item | Reported by Petitioner | Determined by Respondent | Amount in Dispute |
|---|---|---|---|
| Gross receipts | $17,177 | $30,615 | $13,438 |
| Home office expense | 3,216 | -0- | 3,216 |

---

[1] Petitioner concedes respondent's determination as to the amount of the deduction for car and truck expenses, while respondent concedes petitioner's deduction for traveling expenses.

Similarly, after concessions,[2] the following items remain in dispute with respect to petitioner's 1994 tax year:

| Item | Reported by Petitioner | Determined by Respondent | Amount in Dispute |
|---|---|---|---|
| Gross receipts | $44,126 | $52,259 | $8,133 |
| Home office expense | 1,230 | -0- | 1,230 |
| Traveling expense | 8,531 | 347 | 8,184 |
| Meal expense[1] | 280 | -0- | 280 |
| Laundry expense | 596 | 260 | 336 |

[1]  Figures are net of the 50-percent reduction required by sec. 274(n).

For convenience, we shall combine our findings of fact and opinion with respect to each disputed item.

### Discussion

A.   Gross Income

Petitioner reported gross receipts from her sole proprietorship on Schedule C of $17,177 and $44,126 for tax years

[2]  Petitioner concedes respondent's determination as to the amount of the deduction for car and truck expenses.  Petitioner also concedes respondent's determination as to the amount of the deduction for supplies expense.  With respect to the deductions for advertising and telephone expenses, petitioner appears to concede respondent's determination by incorporating the figures determined by respondent into her posttrial brief.  To the extent these items are not conceded, we sustain respondent's determination with respect to these items as petitioner failed to introduce evidence to the contrary.  See Rules 142(a), 149(b); Pearson v. Commissioner, T.C. Memo. 2000-160.

Respondent concedes the deductions claimed by petitioner for interest expense and rent expense.  Respondent also concedes that petitioner is entitled to $347 of the $8,531 deduction for traveling expenses claimed by petitioner.

Finally, the parties have stipulated that petitioner recognized $8,104 in capital gain upon the sale of her principal residence.

1992 and 1994, respectively.  Petitioner did not maintain records to support these figures.  After reviewing the deposits which petitioner made to her bank accounts during the years in issue, respondent determined that petitioner received gross income from her business in excess of that which she reported on her return.

Each taxpayer is required to maintain adequate records of income.  See sec. 6001.  In the absence of adequate books and records, the Commissioner may reconstruct a taxpayer's income by any reasonable method.  See sec. 446(b); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970).  The bank deposits method is an accepted method of income reconstruction when a taxpayer has inadequate books and records.  See DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. 654, 658 (1990).  The bank deposits method assumes that all money deposited into a taxpayer's bank account during a given period constitutes taxable income, although the Commissioner must take into account any nontaxable source or deductible expense of which he has knowledge.  See Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994); DiLeo v. Commissioner, supra at 868.  The taxpayer has the burden of proving that the bank deposits came from a nontaxable source. See Rule 142(a); Clayton v. Commissioner, supra at 645; Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

During the years at issue, petitioner maintained two accounts at Seafirst Bank. Account No. 90708355 consisted of a checking account (checking account 355) and a savings account (savings account 355). Similarly, account No. 907163317 consisted of a checking account (checking account 317) and a savings account (savings account 317). The manner in which respondent used these accounts to reconstruct petitioner's gross income is set out below.

1. Adjustments for 1992 Tax Year

Respondent determined that the deposits to petitioner's savings accounts represented nontaxable income. Accordingly, in reconstructing petitioner's gross income for tax year 1992, respondent considered only the deposits to checking account 355 and checking account 317. The deposits to checking account 355 during 1992 totaled $39,091.52, and the deposits to checking account 317 totaled $2,800.64.[3] From the gross receipts of $41,892.16, respondent subtracted $8,775.54 on account of deposits representing transfers from petitioner's other bank accounts. Respondent subtracted an additional $2,502 for deposits representing nontaxable gifts from petitioner's parents. With total subtractions from gross receipts of $11,277.54, respondent determined that petitioner recognized gross income of

---

[3] The totals of the deposits to checking accounts 355 and 317 are those determined by respondent. Petitioner does not contest these figures; instead, she uses them as the starting point for her own gross income analysis.

$30,614.62.  This figure is $13,437.62 more than that reported by petitioner on her return.

Petitioner objects to respondent's reconstruction of her gross income on the basis that respondent failed to account for additional deposits of nontaxable income.  First, petitioner contends that respondent failed to subtract from the total gross receipts figure the proceeds of a $5,000 car loan, as well as an additional $5,000 representing the proceeds of a loan from a friend.  Respondent concedes that these amounts do not constitute taxable income.  Nonetheless, respondent does not reduce gross receipts by these amounts because the proceeds of the two loans were initially deposited to savings account 355 (a fact confirmed by the bank statements introduced into evidence by petitioner).  Since the beginning gross receipts figure included only deposits to petitioner's checking accounts, there is no reason to reduce that figure on account of deposits of nontaxable income to petitioner's savings accounts.  To the extent the loan proceeds were transferred to petitioner's checking accounts, they were considered by respondent through the reduction for interaccount transfers.  We agree with respondent that the gross receipts figure which respondent determined should not be reduced by the $10,000 in loan proceeds.

Second, petitioner contends that the gross receipts figure should be reduced by $3,002.07 on account of nontaxable gifts

from her parents, as opposed to the $2,502 allowed by respondent. Petitioner produced what appears to be a financial spreadsheet pertaining to her parents which reflects total distributions to or for the benefit of petitioner during 1992 of $3,002.07. Of the $500.07 of such expenditures which respondent determined did not warrant a reduction from gross receipts, $323.07 was paid to third parties on petitioner's behalf. As those amounts were not deposited to petitioner's checking accounts, they do not support a reduction from the gross receipts figure determined by respondent. The remaining $177 in dispute consists of a purported distribution of $27 to petitioner on October 19, 1992, as well as a purported $150 distribution to petitioner on November 26, 1992. Petitioner, however, failed to establish that these amounts were deposited to her checking accounts. Accordingly, petitioner is not entitled to a reduction from gross receipts by reason of nontaxable transfers from her parents in excess of the $2,502 allowed by respondent.

Third, petitioner contends that the reduction from gross receipts on account of interaccount transfers should be $10,735.54 as opposed to the $8,775.54 reduction allowed by respondent for such purpose. Petitioner introduced into evidence bank statements indicating that $10,035.54 in transfers were made

from savings account 355 to checking account 355 during 1992.[4] Given that respondent conceded that all deposits to savings account 355 represent nontaxable income, petitioner is entitled to an additional $1,260 reduction to the gross receipts figure determined by respondent.

In summary, respondent's determination that petitioner received failed to report $13,437.62 of gross income during 1992 is sustained to the extent of $12,177.62.

2. Adjustments for 1994 Tax Year

Similar to his calculations for the 1992 tax year, respondent's reconstruction of petitioner's gross income for 1994 was limited to the deposits made to petitioner's checking accounts. Respondent determined that petitioner made $40,221.57 in deposits to checking account 355 and $53,026.68 in deposits to checking account 317 during 1994.[5] From the $93,248.25 in gross receipts, respondent subtracted $40,988.94 for deposits identified as representing receipts of nontaxable income. Respondent therefore determined that petitioner recognized gross income from her business of $52,259.31 as opposed to $44,126 reported by petitioner.

---

[4] We cannot account for the $700 discrepancy between what petitioner claims should be the reduction from gross receipts for interaccount transfers and the amount of such transfers reflected on the bank statements.

[5] As explained supra note 3, petitioner does not challenge the calculation of total deposits.

Petitioner does not contend that the deposits of nontaxable income into her checking accounts exceeded the $40,988.94 allowed by respondent. Accordingly, respondent's determination that petitioner failed to report $8,133.31 of gross income from her business during 1994 is sustained.

B. Business Deductions

Ordinarily, a taxpayer is permitted to deduct the ordinary and necessary expenses that she pays or incurs during the taxpayer year in carrying on a trade or business. See sec. 162(a). A taxpayer, however, is required to maintain records sufficient to establish the amounts of her deductions. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

When a taxpayer establishes that she paid or incurred a deductible expense but does not establish the amount of the deduction, we may estimate the amount allowable in certain circumstances. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must be sufficient evidence in the record, however, to permit us to conclude that a deductible expense was paid or incurred in at least the amount allowed. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount allowable, we bear heavily upon the taxpayer whose inexactitude is of her own making. See Cohan v. Commissioner, supra at 544.

In addition to satisfying the criteria for deductibility under section 162, certain categories of expenses must also

satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed.  The expenses to which section 274(d) applies include, among other things, traveling expenses (which include expenses for meals and lodging while away from home), and entertainment expenses.  See sec. 274(d)(1) and (2).  We may not use the Cohan doctrine to estimate expenses covered by section 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

1.    Traveling Expenses

On her return, petitioner claimed a deduction for traveling expenses of $8,531 for tax year 1994.  Of this amount, respondent concedes a deduction of $347 for expenses incurred by petitioner for parking.  At trial, petitioner introduced copies of receipts and other documentation in support of her contention that she incurred traveling expenses of $9,003.69.

Traveling expenses are subject to the substantiation requirements of section 274(d).  See sec. 274(d)(1).  No deduction is allowed for expenses incurred for travel away from the taxpayer's home (including meals and lodging) unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating the taxpayer's own statement, each of the following elements:  (1) The amount of each separate expenditure;

(2) the dates of departure and return and the number of days spent on business; (3) the place of destination by name of city or town; and (4) the business reason or expected business benefit from the travel. See sec. 274(d); sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

a. Expenses Not Subject to Section 274

As a preliminary matter, we note that a number of the expenses included by petitioner under the category of traveling expenses do not constitute traveling expenses for purposes of section 274(d). The most significant of these items are the expenses which petitioner incurred for renting the hotel conference rooms in which to conduct her seminars.[6] The expenses which we find are not subject to the substantiation requirements of section 274(d) total $1,711.99 and are enumerated in appendix A.[7] Petitioner is entitled to a deduction for such amounts.

b. Domestic Travel

With respect to deductions claimed for traveling expenses within the United States, we find that petitioner has satisfied the substantiation requirements of section 274(d) with respect to

[6] Petitioner charged a substantial fee for attending the seminars. We do not view the direct costs of conducting the seminars as constituting a traveling expense under sec. 274(d)(1) or an item generally considered to constitute entertainment under sec. 274(d)(2). See sec. 1.274-2(b)(1), Income Tax Regs.

[7] These expenses are in addition to the $347 of parking expenses conceded by respondent.

expenses totaling $1,710.93. These expenses are enumerated in appendix B.

### c. Foreign Travel

Most of the deduction claimed by petitioner for traveling expenses pertains to expenses incurred for travel overseas. During the summer of 1994, petitioner conducted two seminars in Denmark to promote her micropigmentation instruction courses. The first was held at a hotel in Copenhagen, Denmark, on August 29, and the second was held in Alborg, Denmark, on August 31. Petitioner embarked on her trip to Denmark on August 25, and she returned on September 4. In order to conduct preliminary work for the seminars and to establish contacts, petitioner traveled to Denmark in May of 1994.

With respect to the traveling expenses incurred by petitioner during her trips to Denmark, we find that petitioner has satisfied the heightened substantiation requirements of section 274(d) with respect to those expenses enumerated in appendix C. These expenses total $3,505.32.

Among the expenses which we find petitioner did not substantiate under section 274(d) are the airfare and other expenses attributable to Rick Schultsmeier. Petitioner testified that Mr. Schultsmeier accompanied her on the trip to assist her in transporting the equipment and materials which petitioner needed to conduct her seminars. Mr. Schultsmeier, however, was

not an employee of petitioner.  Accordingly, no deduction attributable to expenses incurred on his behalf is allowed.  See sec. 274(m)(3)(A); sec. 1.274-2(g), Income Tax Regs.

While petitioner has satisfied the substantiation requirements of section 274(d) with respect to a number of her foreign traveling expenses, section 274(c) must also be addressed given that these expenses relate to travel outside the United States.  Section 274(c)(1) provides that no deduction (otherwise allowable under section 162) shall be allowed for that portion of the expenses attributable to travel outside the United States which, under regulations prescribed by the Secretary, is not allocable to the taxpayer's trade or business.  See also sec. 1.274-4(a), Income Tax Regs.  The provisions of section 274(c)(1) are applicable only if (a) the travel outside the United States exceeds 1 week and (b) the portion of the time of such travel which is not attributable to the pursuit of the taxpayer's trade or business is 25 percent or more of the total time of such travel.  See sec. 274(c)(2); sec. 1.274-4(b), Income Tax Regs.

The record reflects that petitioner's travel to Denmark in May of 1994 spanned a 6-day period from May 18 to May 23.  We therefore find that petitioner's travel overseas during this period did not exceed 1 week.  As the exception under section 274(c)(2)(A) applies, section 274(c)(1) does not impose an additional restriction on petitioner's ability to deduct

traveling expenses relating to her trip to Denmark in May of 1994. Petitioner is therefore allowed a deduction for items 1 through 4 on appendix C, which total $363.87.[8]

With respect to her second trip to Denmark in 1994, petitioner left from Seattle, Washington, on August 25 and returned on September 4. Her trip thus spanned 11 days. Since the trip exceeded the 7-day threshold set forth in section 274(c)(2)(A),[9] we must determine whether the portion of the time not allocable to petitioner's trade or business constituted 25 percent or more of the total time of her trip.

The regulations specify that the total time traveling outside the United States shall be allocated on a day-by-day basis between days of business activity and days of nonbusiness activity. See sec. 1.274-4(d)(2), Income Tax Regs. We therefore must allocate each of the 11 days which petitioner spent on the trip between these categories.[10] The 2 days which petitioner spent traveling to and returning from Denmark are considered

---

[8] We note that petitioner did not introduce evidence as to the cost of her travel to and from Denmark with respect to this first trip, nor did she claim a deduction therefor.

[9] In analyzing whether the travel time exceeded the 7-day threshold provided in sec. 274(c)(2)(A), the day of departure is not considered. See sec. 1.274-4(c), Income Tax Regs. Thus, for purposes of sec. 274(c)(2)(A), petitioner's trip lasted 10 days.

[10] For purpose of analyzing the 25-percent test under sec. 274(c)(2)(B), the day of departure is included in the calculation. See sec. 1.274-4(c), Income Tax Regs.

business days.  See sec. 1.274-4(d)(2)(i), Income Tax Regs.  In addition, any day during which the principal activity was the pursuit of petitioner's trade or business constitutes a business day.  See sec. 1.274-4(d)(2)(iii), Income Tax Regs.  The business activities in which petitioner engaged while in Denmark included not only preparing for and conducting the seminars, but also training the individuals who sought petitioner's instruction courses.  One of petitioner's clients testified that a typical training session following a seminar took anywhere from 3 to 5 days.[11]  Accordingly, in addition to the 2 days which petitioner spent preparing for and conducting the seminars, we find that petitioner spent at least an additional 5 days training clients whom she obtained through the two seminars and through her efforts during her prior trip to Denmark in May.  As at least 9 days of petitioner's 11-day trip were devoted to the pursuit of petitioner's trade or business, the exception provided by section 274(c)(2)(B) applies.  Section 274(c)(1) therefore does not impose an additional limitation on the deductibility of petitioner's traveling expenses relating to her second trip to Denmark during 1994.  Accordingly, petitioner is entitled to a deduction for items 5 through 30 in appendix C, which total $3,141.45.

---

[11]  This testimony was provided by Beverly Violette, an individual who took a micropigmentation instruction course from petitioner in 1995.  We find her testimony probative of the general nature of the instructional courses which petitioner offered during the prior year.

### d. Conclusion as to Traveling Expenses

To summarize our findings above, petitioner is entitled to a deduction of $1,710.93 for domestic traveling expenses and a deduction of $3,505.32 for foreign traveling expenses. Furthermore, petitioner is entitled to a deduction of $1,711.99 for expenses which she improperly characterized as traveling expenses. Adding the $347 deduction for parking expenses conceded by respondent brings the total deductions to which petitioner is entitled in respect of the expenses discussed above to $7,275.24.

### 2. Meal and Entertainment Expenses

On her tax return for 1994, petitioner reported meal and entertainment expenses of $560. Pursuant to the limitation contained in section 274(n), she claimed a deduction for 50 percent of such expenses. Respondent determined petitioner was not entitled to a deduction for her meal and entertainment expenses on the ground that petitioner had failed to meet the substantiation requirements of section 274(d).

Meal and entertaining expenses are subject to the substantiation requirements of section 274(d). See sec. 274(d)(2). No deduction is allowed for such expenses unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement each of the following elements: (1) The amount of each separate expenditure;

(2) the date of entertainment; (3) the name, if any, address, or location of the entertainment; (4) the business reason for the entertainment or the nature of the business benefit derived or expected to be derived as a result of the entertainment and the nature of the business discussion or activity; and (5) the occupation or other information relating to the person or persons entertained, including the name, title, or other designation, sufficient to establish the business relationship to the taxpayer. See sec. 274(d); sec. 1.274-5T(b)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985).

At trial, petitioner produced 29 receipts containing various notations which she contends substantiate business meal expenses in the amount of $1,600.13. Two of the receipts, totaling $500, represent expenses for food which petitioner provided at her seminars in Denmark. We addressed those expenses in our discussion of petitioner's traveling expenses and shall not consider them here.[12] With respect to the remainder of petitioner's receipts, most of them contain only a notation identifying the individual or individuals entertained as "client" or "clients". With respect to these expenses, petitioner has failed to provide adequate information relating to the person or persons entertained sufficient to establish the business

---

[12] Petitioner was allowed a deduction for these expenses on the ground that they were not subject to sec. 274(d). They are included as items 4 and 5 in appendix A.

relationship to petitioner. See sec. 1.274-5T(b)(3)(v), Temporary Income Tax Regs., supra. Because petitioner has failed to substantiate these deductions pursuant to section 274(d), no deduction is allowed on their account.

With respect to a number of other meal expenses, however, petitioner provided information, including the name of the individual entertained, sufficient to establish the business relationship to petitioner. Through her testimony, petitioner identified these individuals as either plastic surgeons or representatives of beauty spas who contracted with petitioner for her micropigmentation services. We find that petitioner has satisfied the substantiation requirements of section 274(d) with respect to these particular expenses, which are enumerated in appendix D and which total $315.41. After application of the 50-percent limitation contained in section 274(n), petitioner is entitled to a deduction for meal and entertainment expenses of $157.71.

### 3. Home Office Expense

Petitioner claimed deductions of $3,216 and $1,230 for business use of her home during tax years 1992 and 1994, respectively. Respondent disallowed these deductions in their entirety.

As a general rule, an individual taxpayer is not allowed a deduction with respect to expenses attributable to a dwelling unit which the taxpayer uses as a residence. See sec. 280A(a).

Section 280A(c)(1) provides an exception to this general rule for any item allocable to a portion of the dwelling unit which is exclusively used by the taxpayer on a regular basis as the principal place of business for a trade or business of the taxpayer. A taxpayer "exclusively" uses a portion of his dwelling in a trade or business if and only if the portion in question is not at any time during the taxable year used for nonbusiness purposes. See Hefti v. Commissioner, T.C. Memo. 1993-128.

During the years at issue, petitioner resided in a one-bedroom one-bathroom[13] condominium containing 850 square feet of living space. Petitioner designated 500 square feet of her condominium as having been used for business purposes. The space so designated includes her entire living room and dining room, her entire bathroom, and the portion of the kitchen containing the sink. While petitioner contends that she used this portion of her condominium for business purposes, she does not contend that such business use was exclusive. In any event, we would find any claim of exclusive business use implausible. Accordingly, we sustain respondent's disallowance of the deductions claimed by petitioner for business use of her home.

---

[13] Petitioner testified that she added a second bathroom in the closet of her bedroom. Petitioner, however, did not introduce evidence of any such remodeling.

4.  Laundry Expense

With respect to her 1994 tax year, petitioner deducted $596 for professional laundry expense on her Schedule C.  Respondent determined that petitioner was entitled to a deduction of $260 for such expense.  Petitioner did not introduce evidence supporting a deduction in excess of that determined by respondent.  Accordingly, respondent's determination in this regard is sustained.

C.  Additions to Tax and Penalties

1.  Section 6651(a)

Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return.  The addition equals 5 percent of the amount of tax required to be shown on the return for each month the return is late, not to exceed 25 percent in the aggregate.  The addition to tax under section 6651(a)(1) is imposed unless the taxpayer establishes that such failure "is due to reasonable cause and not due to willful neglect".

Petitioner failed to timely file her 1992 and 1994 tax returns.  She contends that such failure is excusable on the ground that she believed that she had a zero tax liability for each year.  Reasonable cause for delinquent filing exists if the taxpayer demonstrates that she exercised ordinary business care and prudence and nonetheless was unable to file the return within the prescribed period.  See United States v. Boyle, 469 U.S. 241,

246 (1985). Petitioner's belief that she did not owe any tax does not satisfy the reasonable cause standard under section 6651(a)(1). See Klyce v. Commissioner, T.C. Memo. 1999-198; Presnick v. Commissioner, T.C. Memo. 1997-398; Krieger v. Commissioner, T.C. Memo. 1993-347. Petitioner advanced no other reasons why her returns for 1992 and 1994 were not timely filed. Respondent is therefore sustained on the additions to tax under section 6651(a)(1).

### 2. Negligence Penalty

Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of the underpayment of tax attributable to negligence or disregard of rules or regulations. See sec. 6662(b)(1). Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence has been described as the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard includes any careless, reckless, or intentional disregard of rules or regulations. See sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. Once the Commissioner has determined an accuracy-related penalty pursuant to section 6662(b)(1), the taxpayer bears the burden of proof as to such issue. See Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

With respect to the meal and entertainment expenses at issue for the 1994 taxable year, we note that petitioner maintained detailed records of the expenses for which she claimed a deduction. While we have determined that petitioner failed to satisfy the substantiation requirements under section 274 with respect to some of these expenses, this determination does not require a finding that petitioner has been negligent or in intentional disregard of respondent's rules and regulations. See Robinson v. Commissioner, 51 T.C. 520, 542 (1968), affd. (but vacated and remanded for recomputation of deficiency) 422 F.2d 873 (9th Cir. 1970); Silverton v. Commissioner, T.C. Memo. 1977-198. The records which petitioner offered to substantiate her meal and entertainment expenses were not so inadequate as to constitute a failure of due care on her part. We therefore hold that petitioner is not liable for the accuracy-related penalty under section 6662(a) with respect to the portion of the underpayment attributable to the disallowed meal and entertainment expense deductions. With respect to the remaining portion of petitioner's underpayment for 1994 and the entire portion of petitioner's underpayment for 1992, respondent's determination of the accuracy-related penalty is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.

## APPENDIX A

### Expense Not Subject to Section 274(d)

| Item | Date | Description | Amount |
|------|------|-------------|--------|
| 1 | 4/19/94 | Bergman Luggage -- converter for booth | $17.85 |
| 2 | 8/5/94 | Bartell Drug -- certificate holder | 5.40 |
| 3 | 8/29/94 | Conference photos | 2.75 |
| 4 | 8/29/94 | Hotel D'Angleterre | 1,153.26 |
| 5 | 9/1/94 | Scheelsminde Hotel | 250.95 |
| 6 | 9/4/94 | SAS -- extra charge 2 crates | 252.60 |
| 7 | 9/6/94 | Containers for equipment | 29.18 |

APPENDIX B

Traveling Expenses
For Travel Within the United States

| Item | Date | Payee | Amount |
|------|------|-------|--------|
| 1 | 2/14/94 | Airport Motor Inn | $43.29 |
| 2 | 2/14/94 | Morris Air | 161.00 |
| 3 | 6/18/94 | Billy Morales #1 | 29.94 |
| 4 | 6/23/94 | Morris Air | 141.00 |
| 5 | 7/21/94 | Lift Tower Lodge | 212.55 |
| 6 | 10/6/94 | Southwest Airlines | 124.00 |
| 7 | 10/1/94 | Cutter's Bayhouse 18 | 36.81 |
| 8 | 9/21/94 | Nendels Inn | 101.34 |
| 9 | 11/21/94 | Alaska Airlines | 150.00 |
| 10 | 11/21/94 | Shuttle Express | 18.00 |
| 11 | 12/29/94 | Radisson Sun Valley Resort | 351.00 |
| 12 | 12/16/94 | Northwest Airlines | 342.00 |

APPENDIX C

Traveling Expenses
For Travel Outside the United States

| Item | Date | Description/Payee | Amount |
| --- | --- | --- | --- |
| 1 | 5/18/94 | DSB -- Danish State Railways | $150.00 |
| 2 | 5/18/94 | Cab Inn Scandinavia | 134.68 |
| 3 | 5/18/94 | Cab Inn Scandinavia | 59.19 |
| 4 | 5/23/94 | DSB - Danish State Railways | 20.00 |
| 5 | 8/25 | Scandinavian Airlines | 1,259.55 |
| 6 | 8/25 | Taxi[1] | 10.00 |
| 7 | 8/25 | Taxi[1] | 32.00 |
| 8 | 8/25 | Taxi[1] | 14.00 |
| 9 | 8/26 | Taxi[1] | 11.00 |
| 10 | 8/26 | Taxi[1] | 7.00 |
| 11 | 8/27 | Taxi[1] | 9.00 |
| 12 | 8/28 | Taxi[1] | 12.00 |
| 13 | 8/29 | Taxi[1] | 10.00 |
| 14 | 8/29 | Taxi[1] | 9.00 |
| 15 | 8/29 | Taxi[1] | 14.00 |
| 16 | 8/29 | Taxi[1] | 8.00 |
| 17 | 8/30 | Hotel Triton | 733.49 |
| 18 | 8/30 | Taxi[1] | 30.00 |
| 19 | 8/30 | Taxi[1] | 27.00 |
| 20 | 8/30 | Taxi[1] | 22.00 |
| 21 | 8/31 | Taxi[1] | 12.00 |
| 22 | 9/1 | Scheelsminde Hotel | 282.16 |
| 23 | 9/1 | Taxi[1] | 22.00 |
| 24 | 9/1 | Taxi[1] | 60.00 |
| 25 | 9/2 | Taxi[1] | 9.00 |
| 26 | 9/2 | Taxi[1] | 10.00 |
| 27 | 9/3 | Taxi[1] | 12.00 |
| 28 | 9/4 | Taxi[1] | 22.00 |
| 29 | 9/4 | Classy-One Limousines | 41.00 |
| 30 | 9/4 | Hotel Danmark | 463.25 |

[1] The documentation provided by petitioner shows the taxi fares expressed in Danish Kroners. We are satisfied that petitioner has provided a reasonable conversion of the amounts to U.S. dollars.

APPENDIX D

Meal and Entertainment Expenses

| Item | Date | Payee | Amount |
|------|------|-------|--------|
| 1 | 3/30/94 | Bamboo Garden | $22.10 |
| 2 | 4/11/94 | Au Mexicana | 37.44 |
| 3 | 6/27/94 | Olive Garden | 28.68 |
| 4 | 7/19/94 | The Kneadery Restaurant | 12.38 |
| 5 | 7/21/94 | Mango Restaurant | 30.18 |
| 6 | 9/3/94 | Rosie McGee's | 80.00 |
| 7 | 9/23/94 | Confucius Restaurant | 17.39 |
| 8 | 9/21/94 | Peg Leg Annie's | 29.30 |
| 9 | 9/4/94 | Bamboo Garden | 26.13 |
| 10 | 10/1/94 | Cutter's Bistro | 31.81 |